*113 OPINION.
Black :
Respondent determined an overassessment for 1920. Consequently, we have no jurisdiction of that year. Cf. Cornelius Cotton Mills, 4 B. T. A. 255. Accordingly, as to the year 1920, the appeal is dismissed.
As to the year 1921, the deficiency determined by the Commissioner is based solely upon the disallowance of the claimed loss stated in our findings of fact. Because of the fact that respondent stated in his deficiency notice that he was allowing $177,947.69 of the claimed loss, but placing it in the year 1920, petitioner contends that the fact that it suffered such a loss is not in issue at all, but that the only thing which is in issue is whether petitioner suffered such loss in 1921, as it claims, or whether it took place in 1920, as respondent claims. Respondent in his answer denied that petitioner had suffered any loss at all in 1921 and his counsel at the hearing and in his brief contends that the burden of proof is on petitioner to show two things — (1) that the items making up the loss which petitioner claims were capital expenditures and therefore properly capitalized on its books, and were in the amounts which petitioner claims; (2) that the abandonment of the publication of the National Directory took place in 1921, as contended by petitioner, and not in 1920, as determined by the respondent. We agree with respondent that in view of the pleadings, the burden of proof is on petitioner to prove both these things before it can prevail. Respondent in his answer is not limited by the grounds stated in the deficiency notice. Cf. John I. Chifley, 25 B. T. A. 1103; Austin Co., 8 B. T. A. 628; aff'd., 35 Fed. (2d) 910; certiorari refused, 281 U. S. 735.
We will first take up the question whether the $177,947.69 loss claimed by petitioner was made up of items which were really capital expenditures. A taxpayer has no right of election to treat items which are properly expense items as capital expenditures, and, vice versa, he has no right of election to treat capital expenditures as expense items. The nature of the expenditures must be determined upon the facts in each case. Gilliam Manufacturing Co., 1 B. T. A. 967.
*114 If all or any of the items which go to make up petitioner’s claimed loss were items which should have been charged to expense when made, then petitioner is not entitled to prevail as to such items, even though it is held that abandonment of the National Directory did take place in 1921, as contended by petitioner, for items which are properly classified as ordinary and necessary business expenses must be taken as deductions in the year when paid or incurred and not later. Revenue Acts of 1918 and 1921, section 234 (a) (1).
Were these expenditures (enumerated in detail in our findings of fact) capital expenditures such as petitioner was entitled to capitalize on its books and carry as an asset until 1921, when the publication of the National Directory was definitely and finally abandoned? In Successful Farming Publishing Co., 23 B. T. A. 150, we held that the cost of building up a magazine circulation structure is a capital expenditure, while the cost of maintaining a circulation structure, once established, is an ordinary and necessary business expense. Cf. also Danville Press, Inc., 1 B. T. A. 1171. We think the situation we have before us in the instant case is similar in many ways to the one in Successful Farming Publishing Co., supra. The expenditures incurred by petitioner connected with the launching of the publication of the National Directory and building up its advertising patronage were capital expenditures in the years preceding and including the year of its first publication, 1916, 1917 and 1918, and, wherever it was possible to segregate them from the ordinary and necessary expenses of' petitioner’s business, it was proper to capitalize them on the books.
The expenses of “ maintaining its circulation in later years ” were, as we said in Successful Farming Publishing Co., supra, ordinary and necessary business expenses. Such were the kind of petitioner’s expenses in 1919 and 1920, in connection with the publication of the directory for those years. These expenses for those j^ears were much greater than the receipts, but petitioner makes no contention that it is entitled to capitalize them, and has not done so. It concedes that all such losses incurred in the publication of the 1919 and 1920 directories must fall in 1919 and 1920, when such expenses were paid and incurred. But it does contend that the items capitalized and detailed in our findings of fact, representing expenditures in 1916, 1917 and 1918 in connection with the launching and establishing of the National Directory, were properly capital items. We agree with this contention except as to item (6) shown in our findings of fact, amounting to $37,371.37. Petitioner, by a careful and exhaustive analysis o.f its books of account, made by a reputable certified public accountant, a,nd offered in evidence, and by other evidence offered at the hearing from the mouths of several witnesses, has, we think, *115 sufficiently identified and established these items, with the exception stated, to meet the burden of proof that they were capital expenditures, and we so hold.
As to item (6), an expert accountant, who testified for petitioner on this item, said that overhead charges can not be specifically assigned to either capital or operating expense and must be apportioned on some equitable basis and that his allocation for petitioner of a proportion of the overhead expense to capital expenditures was in accordance with the usual accounting practice. We do not consider however that we have sufficient evidence in the record to enable us to accept this allocation and to hold that $37,371.37 of petitioner’s overhead expense in 1916,1917 and 1918 was a proper capital item in connection with the launching of the publication of the National Directory. The segregation is not sufficiently supported by the facts. We do not feel that petitioner has sustained the burden of proof as to this item, and to the extent of the amount thereof, respondent’s dis-allowance is approved.
The next issue which we must decide is whether petitioner abandoned the enterprise of publishing the National Directory in 1921, as it contends, or whether such abandonment took place in 1920, as respondent determined in his deficiency notice. In Belridge Oil Go., 11 B. T. A. 127, we said: “ Whether or not there has been an abandonment * * * depends on the intention of the owner, coupled with the act of abandonment, both to be ascertained and determined from all the facts and surrounding circumstances.” To the same effect is I. G. Zumwalt, 25 B. T. A. 566; cf. Liberty Baking Co. v. Heiner, 37 Fed. (2d) 705; Tom (Fayette T.) Moore, 19 B. T. A. 140; Kilby Car & Foundry Co., 4 B. T. A. 1294.
All of those who were directors of petitioner in 1920 and 1921, except Beuben H. Donnelley, who is now deceased, were witnesses at the hearing and all testified that, when it was decided in May, 1920, to suspend the publication of the 1921 edition of the directory, there was no decision to permanently abandon the publication of the directory, but that, on the contrary, it was the intention to resume its publication when the cost of print paper and other costs which entered into its publication had reached more normal levels. Thomas E. Donnelley, president of It. It. Donnelley and Sons Company, printers of the directory, testified that the plates, electrotypes, etc., used in publication of the 1920 directory were not melted up following the May,' 1920, meeting of the directors of petitioner, at which time it was decided to suspend publication of the 1921 edition, but that, on the contrary, this -material was kept stored in cabinets for future use and that this was done at considerable expense to B. B. Donnelley and Sons Company.
*116 The directors all testified, with the exception of Reuben H. Don-nelley, deceased, that at a meeting of the directors in the fall of 1921 it was definitely and finally decided to permanently abandon the publication of the National Directory. Thereafter the accountants of petitioner were instructed to charge off the books the $203,311.99 which had been carried as an asset and it. R. Donnelley and Sons Company, printers, were ordered to “ kill ” the type, and plates and electrotype of the National Directory, which had been stored for future use.
We believe that these facts are sufficient to establish that petitioner abandoned publication of the National Directory in 1921, and that it is entitled to take in 1921 its loss to the extent we have stated.
Respondent contends that because petitioner entered this capital item on its books: “ National Investment December 31, 1918, second issue $101,655.99; third issue $101,656,” it thereby evidenced an intent to take all this deduction in two years, 1919 and 1920, and that it should be held to that election.
We think a sufficient answer to this contention of respondent is the fact that petitioner did not make any such charge-off in 1919 and 1920 on its books, and made no attempt to take any such deductions in its income-tax returns for those years. But, even if it had made such attempt, it is doubtful if it could have succeeded, because a taxpayer is not permitted arbitrarily to write off capital assets as losses and take deductions therefor from his gross income. Danville Press, Inc., supra; Frischkorn Real Estate Co., 21 B. T. A. 965. Such losses can only be taken when there is some event to identify them, such for example as actual and permanent abandonment.
Reviewed by the Board.

Further proceedings will be had under Rule 6£, or, in the absence of such proceedings, judgment will be entered under Rule 50.

SteRNhageN dissents.